# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 16-0920V
Filed: June 28, 2019
UNPUBLISHED

| | |
|---|---|
| STEPHANIE DIGEROLAMO,<br><br>                   Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                   Respondent. | Special Processing Unit (SPU);<br>Attorneys' Fees and Costs;<br>Administrative Time; First Class<br>Airline Ticket; |

*Michael G. McLaren*, Black McLaren Jones Ryland & Griffee, P.C., Memphis, TN, for petitioner.
*Amy Paula Kokot*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

**Dorsey,** Chief Special Master:

      On August 2, 2016, petitioner filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she developed Guillain-Barre Syndrome ("GBS") following the administration of an influenza ("flu") vaccination on October 7, 2015. Petition at 1. On December 19, 2018, the undersigned issued a decision awarding compensation to petitioner based on the parties' stipulation. ECF No. 63.

---

[1] The undersigned intends to post this decision on the United States Court of Federal Claims' website. **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On May 2, 2019, petitioner filed a motion for attorneys' fees and costs. ECF No. 68. Petitioner requests attorneys' fees in the amount of $56,134.70 and attorneys' costs in the amount of $7,002.32. *Id.* at 1. In compliance with General Order #9, petitioner filed a signed statement indicating that petitioner incurred no out-of-pocket expenses. ECF No. 68-3. Thus, the total amount requested is $63,137.02.

On May 3, 2019, respondent filed a response to petitioner's motion. ECF No. 69. Respondent states that "[n]either the Vaccine Act nor Vaccine Rule 13 requires respondent to file a response to a request by a petitioner for an award of attorneys' fees and costs." *Id.* at 1. Respondent adds, however, that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." *Id.* at 2. Respondent "respectfully recommends that the Chief Special Master exercise her discretion and determine a reasonable award for attorneys' fees and costs." *Id.* at 3.

Petitioner has filed no reply.

The undersigned has reviewed the billing records submitted with petitioner's request and finds a reduction in the amount of fees to be awarded appropriate for the reasons listed below.

> **I.**     **Legal Standard**

The Vaccine Act permits an award of reasonable attorneys' fees and costs. § 15(e). Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Id.* at 1522. Furthermore, the special master may reduce a fee request *sua sponte*, apart from objections raised by respondent and without providing a petitioner notice and opportunity to respond. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 209 (2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 729 (2011).

The petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred." *Wasson v. Sec'y of Health & Human Servs.,* 24 Cl. Ct. at 482, 484 (1991). She "should present adequate proof [of the attorneys' fees and costs sought] at the time of the submission." *Id.* at 484 n.1. Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S., at 434.

**II.     Attorneys' Fees**

    A.  Hourly Rates

        i.      Michael G. McLaren

Petitioner requests the following rates for attorney Michael G. McLaren: $425 for work performed in 2016, $440 for work performed in 2017, $456 for work performed in 2018 and $473.00 for work performed in 2019. ECF No. 68-2 at 38.  For the 2016 – 2018 hourly rates these rates have been previously awarded to Mr. McLaren and the undersigned awards them herein.  Regarding the requested 2019 hourly rate of $473, this amount exceeds Mr. McLarens' experience range of attorneys with over 31 years' experience.[3]  The undersigned will award an increase, however reduces the requested rate to $464 per hour.  This results in a reduction in the amount of **$3.60**.[4]

    B.  Excessive and Duplicative Billing

The undersigned has previously reduced the fees paid to petitioners due to excessive and duplicative billing.  *Ericzon v. Sec'y of Health & Human Servs.*, No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).  The undersigned and other special masters have previously noted the inefficiency that results when cases are staffed by multiple individuals and have reduced fees accordingly.  *See Sabella*, 86 Fed. Cl. at 209.  Billing records show that three attorneys, including two partners, and two law clerks billed time in this matter.  Together the staff billed 68 separate line item entries reviewing CMECF entries throughout the case.  This resulted a total of 14.2 hours billed or $4,387.70, in time billed reviewing the notifications.  The motion for attorney fees does not include supporting documentation to support the necessity of having multiple people review and notate the same notifications.

The undersigned also finds that the total number of hours billed by the attorneys, law clerks and paralegals regarding internal communications to be excessive.  Over 19 hours was billed solely for the staff to discuss the case internally, draft and read internal emails, inter-office meetings, developing case strategies, and preparing instructions for staff and plans to proceed with the case.  Examples of these entries include:

---

[3] The schedule for 2019 is available on the U.S. Court of Federal Claims website at www.cofc.uscourts.gov/node/2914

[4] This amount consists of $473 - $464 = $9 x 0.40 hrs - $3.60.

- April 21, 2016 (0.20 hrs) "Emails to and from Christ Webb regarding whether to start requesting records; Email to Carmen Garcia with instructions medical records"
- May 31, 2016 (0.10 hrs) "Conversation with Samantha Ward regarding invoice and release"
- June 28, 2016 (0.10 hrs) "Correspondence to Samantha Ward regarding requests to be sent"
- August 29, 2016 (0.40 hrs) "Begin to develop strategy and plan of action for lost wages demand"
- October 17, 2016 (0.40 hrs) "Debrief after status conference"
- November 4, 2016 (0.10 hrs) "Evaluate case and assist with plan and strategy"
- January 13, 2017 (0.10 hrs) "Discuss case status an develop strategy going forward"
- January 26, 2017 (0.20 hrs) "Develop strategy and plan of action regarding how to utilize life care planner"
- February 8, 2017 (0.40 hrs) "Discuss case status an develop strategy going forward"
- October 30, 2017 (0.30 hrs) "Office conference regarding strategy, and discuss where we are and when we can get to a point to resolve matters"
- December 7, 2017 (0.20 hrs) "Intra-office meeting with staff to discuss path forward, where we are now, necessary activity and impending dates"
- January 15, 2018 (0.20 hrs) "Go over scheduling order and talk in house regarding same"
- February 26, 2018 (0.30 hrs) "Review file for status and develop strategy and plan of action for resolving case via settlement"

ECF No. 68-2 at 2-4, 7-9, 14-15 and 26-29.[5]

### C. Administrative Time

Upon review of the billing records submitted, it appears that a number of entries are for tasks considered clerical or administrative. In the Vaccine Program, secretarial work "should be considered as normal overhead office costs included within the attorneys' fee rates." *Rochester v. U.S.*, 18 Cl. Ct. 379, 387 (1989); *Dingle v. Sec'y of Health & Human Servs.*, No. 08-579V, 2014 WL 630473, at *4 (Fed. Cl. Spec. Mstr. Jan. 24, 2014). "[B]illing for clerical and other secretarial work is not permitted in the Vaccine Program." *Mostovoy*, 2016 WL 720969, at *5 (citing *Rochester*, 18 Cl. Ct. at 387). Examples of these entries include:

- May 3, 2016 (0.10 hrs) "Work on scanning"

---

[5] These are merely examples and not an exhaustive list.

4

- May 31, 2016 (0.10 hrs) "Work on scanning and saving documents to subfile"
- July 14, 2016 (0.10 hrs) "Work on creating subfile folder for newly received medical records from Integrative Neurological Care"
- August 2, 2016 (0.10 hrs) "Receive, review and note petition docketing entry"
- December 5, 2016 (0.20 hrs) "Review, scan and save invoices from Aospt and Stratford Primary Care and submit for payment"
- December 19, 2016 (0.10 hrs) "Work on scanning"
- December 29, 2016 (0.10 hrs) "Work on creating subfiles for new medical records"
- May 25, 2017 (0.10 hrs) "Work on scanning and saving client document to subfile"
- November 13, 2017 (0.10 hrs) "Save filed copy of status report to file"
- March 7, 2019 (0.20 hrs) "Prepare package to HMS for Medicaid lien resolution"
- March 8, 2019 (0.10 hrs) "Receive, review and note check delivery receipt"

ECF No. 68-2 at 2-3, 5-6, 11-13, 20, 26 and 37.[6]

For the reasons listed above, the undersigned finds a reduction of fees appropriate. The undersigned reduces the overall request for attorneys' fees by 5%, for a total reduction of **$2,806.56**.

## II. Attorney Costs

Petitioner seeks $7,002.32 in attorneys' costs that include costs for travel, medical records, postage and filing. Upon review the undersigned notices multiple repeating issues regarding the amount of costs requested for reimbursement including costs for airfare, meals and incidentals. All travel was billed by an associate attorney of Black McLaren, attorney Chris Webb. Mr. Webb has previously had applications for attorney fees and costs reduced for the same reasons listed below.

### A. Airline Tickets

The initial visit to the client took place Thursday August 25 – Friday, August 26, 2016. ECF No. 68-2 at 52. Mr. Webb submitted reimbursement for his first-class travel ticket in the amount of $844.70. *Id*. at 56. Mr. Webb did not include justification on why a first-class ticket was necessary. The second visit to the client was Thursday, August 24 – Saturday, August 26, 2016. *Id*. at 39. Mr. Webb purchased a first-class airline ticket for $618.10 with no justification on why the more expensive ticket was purchased.

---

[6] These are merely examples and not an exhaustive list.

*Id.* at 69.  The third trip to the client was Sunday, April 15 – Tuesday, April 17, 2018. *Id*. at 39.   As with the first two client visits, Mr. Webb purchased a first-class ticket at a cost of $1,075.10.  *Id*. at 88.  However, he attempted to justify the first-class ticket by stating this was the "cheaper" option for a flight.  *Id.* at 89.  The undersigned notes that airfare is subject to wide-ranging price differentials based upon, other factors, the date on which the flight is booked, and one curated data point cannot be extrapolated to show that a first-class flight was the most reasonable option of travel.  Mr. Webb has previously had requests for costs reduced for purchasing first class airfare with the justification of it being the "cheaper" option. *Wright v. Sec'y of Health & Human Servs.*, No. 12-0423V, Slip Op. at 144 (Fed. Cl. Spec. Mstr. December 10, 2018).  Because the Vaccine Program does not compensate for first-class airfare, the undersigned reduces the amount of all three first-class tickets by half, a total reduction of **$1,268.95**.[7]

      B.  Hotel Rates

On the first visit to the client, Mr. Webb stayed at The Westin Philadelphia at a rate of $224 per night.  ECF No. 68-2 at 59.  This nightly rate exceeds the per diem rate for a hotel stay in Philadelphia in 2016, which is $155.00 per night.[8]  The undersigned will award the 2016 per diem nightly rate for Mr. Webb's hotel stay, plus any applicable state and local taxes. This results in a reduction of **$69.00**.[9]

During a client visit in 2018, Mr. Webb stayed at the Loews Hotel Philadelphia (Lowes).  *Id*. at 78 and 90.  In 2018, Mr. Webb paid a nightly rate of $379.00.  *Id.*  The per diem rate for a hotel stay for 2018 is $202 per night for April 2018.[10]  The website for Lowes states that it is the "[p]erfect option for any luxury hotel".[11]  By staying in a "luxury hotel", nightly rates are higher and additional expenses are incurred, including a daily charge listed as "Telephone – Internet – Guest" at a rate of $14.95 per day.  *Id*. at 78 and 90.  The undersigned will award the per diem rate for April 2018 which is $202.00.  This results in a reduction of **$413.80**.[12]

      C.  Meals

---

[7] This amount is consists of $844.70 + $618.10 + $1,075.10 = $2,537.90 /2 = $1,268.95.

[8] See GSA FY 2016 Per Diem Rates for Philadelphia, Pennsylvania at https://www.gsa.gov/travel/plan-book/per-diem-rates.

[9] This amount consists of $224 - $155 = $69.00.

[10] See GSA FY 2018 Per Diem Rates for Philadelphia, Pennsylvania at https://www.gsa.gov/travel/plan-book/per-diem-rates.

[11] See Loews Hotel Philadelphia's website at https://www.loewshotels.com/philadelphia-hotel

[12] This amount consists of ($379 - $202 per diem = $177 x 2 nights = $354) + ($14.95 x 4 nights = $59.80) = $413.80.

6

Just as with the hotel rates, Mr. Webb requests exceeded the daily per diem for meals. For Philadelphia, Pennsylvania the per diem rate for meals is $64 per day. Mr. Webb purchased extravagant meals for himself, including a meal at Ruth's Chris Steak House totaling $142.13.[13] ECF No. 68-2 at 54. Other special masters have previously reduced Black McLaren attorneys, Mr. Webb included, for excessive expenditures on meals during travel. *Reichert v. Sec'y of Health & Human Servs.* No. 16-0697V, 2018 WL 3989429, at *4, (Fed. Cl. Spec. Mstr. December 4, 2018), *Dempsey v. Sec'y of Health & Human Servs.,* No. 04-0394V, 2017 WL 6343870, at *9 (Fed. Cl. Spec. Mstr. November 16, 2017), *Mohr v. Sec'y of Health & Human Servs.*, No. 16-1139V, Slip Op. *at* 28, *2. In addition, there are several items listed that did not have receipts included. The undersigned reduces all meal charges to the appropriate per diem rates as follows:

| Date | Requested Amt | Per Diem | Reduction |
|---|---|---|---|
| | | | |
| August 25, 2016 | $178.04 | $64.00 | ($114.04) |
| August 26, 2016 | $33.86 | $64.00 | $0 |
| August 24, 2017 | $36.64 | $64.00 | ($4.00) – No Receipt |
| August 25, 2017 | $89.01 | $64.00 | ($25.01) |
| August 26, 2017 | $13.50 | $64.00 | ($13.50) – No Receipt |
| April 15, 2018 | $52.00 | $64.00 | ($12.00) |
| April 16, 2018 | $71.67[14] | $64.00 | ($7.67) |
| April 17, 2018 | $41.24 | $64.00 | ($8.00) – No Receipt |

The undersigned reduces the request for attorney costs in the amount of **$184.22**, the total amount in meals that exceed the per diem rate or where petitioner did not provide receipts.

D. Uber Black

During the 2017 and 2018 client visits, Mr. Webb utilized Uber Black as transportation to and from the airport and hotel. ECF No. 68-2 at 75-76 and 85 – 86. For 2017, a total of $120.12 was charged in 2017 and $130.08 was charged in 2018. *Id.* While Uber is certainly a compensable means of transportation, Uber Black is a black car service provided by Uber and is more luxurious and more expensive than a traditional Uber ride. The attorneys of Black McLaren have previously had costs reduced for using the services of Uber Black. *Wright,* *6. Mr. Webb did not provide any reasoning as to why this service was used rather than a traditional uber or taxi service,

---

[13] Mr. Webb made an unknown deduction of $35.00 on this receipt and is requesting reimbursement for $107.13.

[14] This amount does not include a charge from Marlton Diner on April 16,2018 in the amount of $44.41. ECF No. 68-2 at 83. This receipt is noted "Lunch with client" and the undersigned will reimburse the amount in full.

7

which would have been a cost of $28.50 each way.[15] The undersigned reduces the request for Uber Black to $28.50, for each ride to and from the airport, resulting in a reduction of **$136.20**.[16]

### E.  Other Costs

Mr. Webb is seeking reimbursement for additional extras that are non-compensable through the Vaccine Program. These include satellite radio ($7.99) and valet parking ($54.00). ECF No. 68-2 at 52 and 59.  These charges can be considered conveniences and not necessities.  The undersigned shall reduce the request for attorneys' costs in the amount of **$61.99**.

### IV.    Conclusion

Based on the reasonableness of petitioner's request, the undersigned **GRANTS IN PART** petitioner's motion for attorneys' fees and costs.

| | |
|---|---:|
| Requested attorneys' fees: | $56,134.70 |
| Reductions: | -  2,810.16 |
| **Adjusted Fees Total:** | **$53,324.54** |
| Requested attorney costs: | $7,002.32 |
| Reductions: | - 2,134.16 |
| **Adjusted Costs Total:** | **$4,868.16** |
| **Total Attorneys' Fees and Costs Awarded:** | **$58,192.70** |

**Accordingly, the undersigned awards the total of $58,192.70**[17] **as a lump sum in the form of a check jointly payable to petitioner and petitioner's counsel Michael G. McLaren.**

---

[15] Independent research by the Court reveals that the standard flat rate for a taxi from the Philadelphia Airport to the Center of Philadelphia, per the Philly-Taxi. com website.  http://www.philly-taxi.com/fares.htm

[16] This amount consists of ($120.12 - $28.50 from airport - $25.80 to airport = $63.12) + ($130.08 - $28.50 from airport - $28.50 to airport = $73.08) = $136.20.

[17] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs" as well as fees for legal services rendered. Furthermore, § 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir.1991).

The clerk of the court shall enter judgment in accordance herewith.[18]

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master

---

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.